IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ISMAEL CEDENO,

        Plaintiff,

v.

NAVIENT SOLUTIONS, INC.,

        Defendant.

Case 0:16-cv-61049-UU

**DEFENDANT NAVIENT SOLUTIONS, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

    Defendant Navient Solutions, Inc. ("NSI"), by and through undersigned counsel, moves this Court for partial summary judgment pursuant to Federal Rule of Civil Procedure 56, and, in support thereof, states as follows:

**INTRODUCTION**

    Plaintiff Ismael Cedeno ("Plaintiff") brings claims against NSI for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (the "TCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (the "FDCPA").[1] The TCPA prohibits, among other things, making a call to a cellular telephone through the use of an automated telephone dialing system without the called party's "prior express consent." The FDCPA is another federal statute which regulates the permissible acts and practices of debt collectors.

    NSI is a servicer of student loans, including with respect to federal student loans that are owned or guaranteed by the United States Department of Education ("ED"). As part of its servicing function, NSI makes calls and sends letters to borrowers so as to collect on delinquent loan amounts and advise them of available repayment options.

---

[1]     Plaintiff also alleges claims under the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, et seq., The Motion is not directed to those claims.

In the Complaint, Plaintiff contends that NSI violated the TCPA when it called on his cell phone regarding his federal student loans. Plaintiff further argues that the very same conduct constitutes a separate violation of the FDCPA. However, put simply, these claims fail as a matter of law. The Bipartisan Budget Act of 2015 (the "Budget Act"), effective as of November 2, 2015, amended the TCPA to eliminate the prior express consent requirement for calls "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. 227(b)(1)(A)(iii). Because NSI called Plaintiff with respect to his federal student loans, it has no liability under the TCPA for phone calls after the Budget Act's effective date. Further, there can be no liability under the FDCPA, as NSI is not a "debt collector" as defined therein.

## BACKGROUND

I.   **NSI, Plaintiff's Loan And The Phone Calls**

NSI is engaged in the business of servicing student loans, including with respect to loans owed to or guaranteed by ED. The servicing of federal student loans is governed by a complex set of federal regulations promulgated by ED, pursuant to the Higher Education Act of 1965, as amended. See 34 C.F.R. §§ 682.400-682.423, 685.300-685.309. As relevant here, when federal student loans become past due, NSI is required to contact delinquent borrowers. 34 C.F.R. § 682.411(c)-(f).

Plaintiff applied for and received a federally guaranteed Consolidation loan in May 2006 (the "Loan"), which consolidated various Stafford loans previously taken out by Plaintiff. NSI began servicing the Loan at or near inception, when it was in good standing and prior to default. (Declaration of Carl Cannon, ¶ 5, attached as Exhibit A). The Loan most recently became due for repayment on April 25, 2016, following the conclusion of various, lengthy periods of deferment or forbearance. Plaintiff made no payments to the Stafford loans prior to

consolidation. He has not made a payment since the Loan reentered repayment and, as a result, the Loan has been delinquent since April 2016. (Id., ¶ 6.)

## II. The Complaint

Plaintiff alleges that, in or about May of 2015, during a phone call with one of NSI's agents, he revoked his prior express consent for calls to her cellular telephone. However, according to Plaintiff, NSI called her thereafter approximately 150 times. Accordingly, on May 17, 2016, Plaintiff filed his Complaint against NSI, asserting claims for violations of the TCPA and FDCPA.

## ARGUMENT

### I. The Legal Standard

"Adjudications of partial summary judgment are authorized under Rule 56(d), Fed. R. Civ. P., and are governed by the standards for summary judgment in Rule 56(c)." Heller v. Plave, No. 89-0639-CIV-ATKINS, 1993 WL 557846, at *4 (S.D. Fla. Aug. 2, 1993) (citing Johns v. Jarrard, 927 F.2d 551, 554-56 (11th Cir. 1991)). A partial summary judgment "serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact." Heller, 1993 WL 557846 at *4; Advisory Committee Note to Rule 56(d), 1946 Amendment; see also Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986); see also Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). A fact is material when, under the substantive governing law, it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the evidence offered in support of the motion establishes every essential element of a defense, there is no need to offer evidence to negate or disprove matters on which the

opposing party has the burden of proof at trial.  Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2548.

"After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  Legg v. Voice Media Grp., Inc., 20 F. Supp. 3d 1370, 1373 (S.D. Fla. 2014) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).  To show there is a genuine issue of material fact "requires more than showing a mere scintilla of evidence; the non-movant must show that reasonable jurors could find by a preponderance of the evidence that the non-movant is entitled to a verdict."  Velten v. Lippert, 985 F.2d 1515, 1523 (11th Cir. 1993) (citing Anderson, 477 U.S. at 252, 106 S. Ct. at 2512).  Indeed, the Eleventh Circuit has held that the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial."  Walker v. Darby, 911 F. 2d 1573, 1576–77 (11th Cir. 1990).

Here, NSI easily meets the standard for summary judgment.  As explained below, the facts are narrow and extraordinarily simple, and the governing law is clear and unmistakable.  The Court therefore should grant the Motion.

**II.    The Budget Act Bars Plaintiff's TCPA Claims For Calls That Occurred After November 2, 2015.**

On November 2, 2015, the President signed the Budget Act into law.  Section 301 of the Budget Act (the "Amendment") provides that autodialed calls are exempt from the TCPA's prior express consent requirement if they are "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii).  Here, Plaintiff proposes to recover for

autodialed calls made by NSI on the Loan after November 2, 2015. Because these calls took place after the effective date of the Amendment, no prior express consent requirement applied to them, and Plaintiff's purported revocation of such consent has no meaning.

Moreover, the calls made to Plaintiff are precisely of the type that Congress intended to permit through the Amendment. For example, in the lead-up to passage of the Budget Act, ED issued a report calling for Congress to "change the law to ensure that servicers can contact borrowers using modern technology." See "Strengthening the Student Loan System to Better Protect All Borrowers," U.S. Department of Education, October 1, 2015, at p. 16 <available at http://www2.ed.gov/documents/press-releases/strengthening-student-loan-system.pdf> (last viewed May 4, 2016). ED argued that:

> If servicers are able to contact a borrower, they have a much better chance at helping that borrower resolve a delinquency or default. Many student loan borrowers, especially those that may just be graduating, move frequently in addition to no longer having landline phone numbers. As such, it can be difficult for servicers to find a borrower except by using a cell phone number. Current Federal law prohibits servicers from contacting borrowers on a cell phone number using an auto-dialer unless the borrower has provided explicit consent to be contacted at that number. With phone numbers changing or being reassigned on a regular basis, it is virtually impossible for servicers to use auto-dialing technology. The President's 2016 Budget proposed amending this law to allow the use of automated dialers to contact borrowers to inform them of their federal repayment obligations and benefits like Pay As You Earn, or Rehabilitation, in the case of a defaulted borrower.

Id. Thus, based on the Amendment and ED's sound, underlying rationale in requesting it, the Court should find that Plaintiff's claims for phone calls after November 2, 2015 fail.

Furthermore, the Court should reject any contention from Plaintiff that this outcome somehow changes in light of rulemaking issued by the Federal Communications Commission (the "FCC") on August 11, 2016. The Budget Act directed the FCC to "prescribe regulations to implement the amendments made" by Section 301 within nine months of enactment. See Budget

-5-

Act at § 301(b).  The FCC did just that on August 11, 2016, when it released a Report and Order to implement the Amendment.  See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, FCC 16-99 (August 11, 2016) (the "August 2016 Order"), attached as Exhibit B.  The August 2016 Order appended the FCC's Final Rules implementing the Amendment; however, the Final Rules are not yet effective.  As the August 2016 Order makes clear, because certain of the Final Rules implicate the Paperwork Reduction Act, as a whole, the rules will not become effective "until 60 days after the Commission publishes a Notice in the Federal Register indicating approval of the information collection by the Office of Management and Budget (OMB)."  See August 2016 Order at 24 at ¶¶ 59-60.  Thus, the Final Rules are not in place and, until they are, the Amendment applies, as written.

### III. Plaintiff's FDCPA Claim Fails Because NSI Is Not A "Debt Collector."

Before Plaintiff may sue for alleged violations of the FDCPA, he must first establish that NSI is a "debt collector" within the meaning of the statute.  Indeed, the FDCPA was enacted to "eliminate abusive debt collection practices by **debt collectors**, to insure that those **debt collectors** who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e) (emphases added).

Pursuant to the FDCPA, a "debt collector" is defined as a person whose "principal [business] purpose is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The term "debt collector" expressly does not include "any person collecting or attempting to collect any debt . . . to the extent such activity . . . concerns a debt which was not in

default at the time it was obtained . . ." 15 U.S.C. § 1692a(6)(F)(iii).  The legislative history of the FDCPA clearly shows Congress intended parties who service debts not in default when obtained (such as mortgages and student loans) should be excluded from the FDCPA's coverage. S. Rep. No. 95-382, 95th Cong., 1st Sess. 3-4, reprinted in 1977 U.S.C.A.A.N. 1695, 1698.

Further, Courts have widely held that entities that service student loans before such loans default are not "debt collectors" within the meaning of the FDCPA.  See, e.g., Pelfrey v. Educ. Credit Mgmt. Corp., 71 F. Supp. 2d 1161, 1170 (N.D. Ala. 1999) (reviewing case law and noting that student loan servicing agencies are not subject to the FDCPA), aff'd, 208 F.3d 945 (11th Cir. 2000); *Horton v. HSBC Bank*, 2013 WL 2452273, No. 1:11-CV-3210-TWT, at *8 (N.D. Ga. June 5, 2013); Jones v. InTuition, Inc., 12 F. Supp. 2d 775, 779 (W.D. Tenn. 1998) (defendant not a "debt collector" because it began servicing the student loan at issue before default); Coppola v. Conn. Student Loan Found., Case No. N-87-398 (JAC), 1989 U.S. Dist. LEXIS 3415, at **6-7 (D. Conn. 1989) (student loan servicer excluded from FDCPA's definition of "debt collector"); and Fischer v. Unipac Serv. Corp. & Student Loan Mktg. Ass'n, 519 N.W.2d 793, 799-800 (Iowa 1994) ("[C]ollection efforts by holders of federally insured student loans or their servicing companies are simply not the kind of activity that Congress intended to regulate [under the FDCPA].").

Here, Plaintiff has not claimed that the Loan was in default when NSI obtained it, nor did he claim that NSI acquired the Loan from any other party after default.  Nor can he, where NSI has serviced them since origination, when they were in good standing and obviously prior to default. (Declaration of Carl Cannon, ¶ 5).  Accordingly, Plaintiff's FDCPA claim against NSI fails as a matter of law, and there exists no genuine issue of fact that would allow this claim to proceed.

## **CONCLUSION**

For the foregoing reasons, NSI respectfully requests that this Court grant summary judgment in favor of NSI on Plaintiff's claims under the TCPA for phone calls after November 2, 2015 and the FDCPA.

Respectfully submitted,

NAVIENT SOLUTIONS, INC.

By:/s/ Rachel A. Morris
      Rachel A. Morris

Rachel A. Morris, Esq.
Florida Bar No. 0091498
SESSIONS, FISHMAN, NATHAN & ISRAEL
3350 Buschwood Park Drive, Suite 195
Tampa, FL 33618
Telephone: (813) 890-2469
Facsimile: (866) 466-3140
ramorris@sessions.legal

-9-

## CERTIFICATE OF SERVICE

I hereby certify that, on November 17, 2016, a copy of the foregoing **DEFENDANT NAVIENT SOLUTIONS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** was served by electronic mail on the party listed below:

>William Peerce Howard, Esq.
>The Consumer Protection Firm, PLLC
>210 A South MacDill Avenue
>Tampa, FL  33609
>Tel: (813) 500-1500
>Fax: (813) 435-2369
>Billy@TheConsumerProtectionFirm.com
>Attorneys for Plaintiff

    /s/Rachel A. Morris
        Attorney