**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

ISMAEL CEDENO,

      Plaintiff,

v.

NAVIENT SOLUTIONS, INC.,

      Defendant.

Case 0:16-cv-61049-UU

**DEFENDANT NAVIENT SOLUTIONS, INC.'S
REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.** **Introduction**

By his Response to Defendant's Motion for Partial Summary Judgment (the "Response"), Cedeno does not save his claims under the TCPA or FDCPA.[1] As an initial matter, Cedeno is wrong in arguing that the Budget Act does not bar his TCPA claim for calls made after November 2, 2015. Cedeno contends that the Amendment, which eliminated the prior express consent requirement for calls made to collect on federal debt and was enacted as of November 2, 2015 -- somehow had no effect whatsoever until the FCC issued guidance on August 11, 2016 (the "August 2016 Order"). The Amendment contains no such limitation, however, and it plainly applied upon enactment, as written.[2] Moreover, Cedeno asserts that the calls at issue were "servicing-related" and, thus, not made "solely" to collect a debt. This argument construes the Amendment far too narrowly (and illogically) and, indeed, the calls made to Cedeno related only to efforts to cure the delinquency on his student loans, which is the very definition of collection.

Finally, in his effort to persuade the Court that NSI is a debt collector for purposes of his FDCPA claim, which it is not, Cedeno argues that the authority on which NSI relies is inapposite or incorrect. But this argument is meritless, too. The law is well-settled on this point and, thus, Cedeno's attempts to distinguish the authority are unavailing.

Very simply, NSI is entitled to partial summary judgment based on the undisputed facts and applicable law. The Court therefore should grant the Motion.

---

[1] Terms shall be used herein as defined in the Motion, unless otherwise noted.
[2] The August 2016 Order appended the FCC's Final Rules implementing the Amendment; however, the Final Rules are even now not yet effective, as noted in NSI's moving papers. (Motion, p. 6.)

**II.     Argument**

    **A.     The Plain Language Of The Amendment Demonstrates That It Was Effective Upon Enactment.**

In asserting that the Amendment did not become effective upon enactment, Cedeno first relies on a single phrase, which directs the FCC to "prescribe regulations to implement the amendments." (Response, p. 4.) Cedeno contends that, based on this phrase, "it is evident that the relevant changes in the law were not self-executing upon enactment . . . ." (Id.) This is simply not so.

The clear and unambiguous language of the Amendment demonstrates that it became effective on the date it was enacted – November 2, 2015. Specifically, Section 301(a) of the Budget Act provides: "Section 227(b) of the Communications Act of 1934 (47 U.S.C. 227(b)) *is amended*—." (emphasis added). Section 301(a) does not state that the TCPA will be amended, or that the Amendment takes effect at some time in the future, which Congress certainly could have stated. Indeed, Congress did exactly that with regard to other portions of the Budget Act. For example, Section 501 of the Budget Act provides that the amendments to 29 USCA § 1306 (relating to premium rates under the Employee Retirement Income Security Program) "*shall apply to plan years beginning after December 31, 2016*." Budget Act, PL 114-74, 129 Stat 584, § 501 (emphasis added). Similarly, Section 812 of the Budget Act (pertaining to the Social Security Act, 42 U.S.C. 423(d)(5)) provides:

> The amendment made by subsection (a) shall apply with respect to determinations of disability *made on or after the earlier of*—
>
>     (1) *the effective date of the regulations issued by the Commissioner under subsection (b)*; or
>
>     (2) *one year after the date of the enactment of this Act*.

Id., § 812 (emphasis added). Accordingly, Congress had the ability to determine when each provision of the Budget Act would be effective, and it chose to make the Amendment effective immediately, not at some point in the future.

Further, in its own guidance issued after November 2, 2015, the FCC itself has acknowledged that the Amendment took effect upon enactment. See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, 2016 WL 2759146, ¶ 4 (F.C.C. May 6, 2016) ("May 6, 2016 Notice"). In Paragraph 4 of the May 6, 2016 Notice, the FCC stated that:

> Section 227(b)(1)(A) and (B) of the TCPA *now* explicitly do not make it unlawful for anyone to make autodialed, artificial-voice, or prerecorded-voice calls to both wireless phones and residential landline phones, without the prior express consent of the called party, if the calls are "made solely to collect a debt owed to or guaranteed by the United States…

In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, 2016 WL 2759146, ¶ 4 (F.C.C. May 6, 2016) (emphasis added). Similarly, in Paragraph 5 of the August 2016 Order, the FCC again noted:

> As amended by Section 301 of the Budget Act, Sections 227(b)(1)(A) and (B) of the TCPA *now* explicitly except from the prior express consent requirement certain autodialed, artificial-voice, and prerecorded-voice calls either to wireless phones or to residential landline phones, if the calls are "made solely to collect a debt owed to or guaranteed by the United States."

In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot Act of 1991, CG Docket No. 02-278, 2016 WL 4250379, ¶ 5 (F.C.C. August 2, 2016) (emphasis added). The word "now" is plain, straightforward and unmistakable.

However, Cedeno also asserts that, through the August 2016 Order, the "FCC decided to delay allowing collectors of U.S. Government owned or guaranteed debt to make calls without prior express consent under the new statutory provision because not all of the FCC regulations

-3-

could be made effective immediately." (Response, p. 5.) This makes no sense, of course, because the FCC could not decide in August 2016 to prohibit conduct that had been undertaken based on the Amendment enacted in November 2015. Moreover, the Amendment reflected a decision from Congress, which the FCC is in no position to overrule. Further, to the extent that Cedeno is attempting to argue that the August 2016 Order has the retroactive effect of limiting NSI's rights under the Amendment, he finds no support in the law.

A statute or agency rule does not have retroactive effect where it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Durable Mfg. Co. v. U.S. Dep't of Labor, 578 F.3d 497, 502 (7th Cir. 2009) (quoting Landgraf v. USI Film Products, 511 U.S. 244, 280, 114 S.Ct 1483, 128 L.Ed.2d 229 (1994)). Because of the inherent unfairness of imposing new burdens after the fact, the ability of an agency to promulgate rules with retroactive effect is limited, and courts only apply statutes or rules retroactively when Congress or the rulemaking agency is clear in its intent. See Landgraf, 511 U.S. at 270 ("Since the early days of this Court, we have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent.") Thus, when an agency promulgates a new rule, that rule does not apply retroactively unless "Congress has expressly conferred power on the agency to promulgate rules with retroactive effect and . . . the agency clearly intended for the rule to have retroactive effect." Durable Mfg. Co. 578 F.3d at 502; see Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208-09, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (holding that an administrative agency may not promulgate retroactive rules unless Congress has provided it with express authority to do so and, even if such authority is given, an agency rule will not be accorded retroactive effect unless the agency uses language in the rule expressly requiring that result).

Here, the August 2016 Order imposes additional burdens on loan servicers, like NSI. It places more stringent requirements on loan servicers by deciding who may make covered calls, limiting the number of federal debt collection calls that may be made and determining who may be called. (August 2016 Order, p. 6). The August 2016 Order, then, could only be applied retroactively if Congress expressly conferred that power on the FCC and the FCC clearly intended the rules to have retroactive effect. Durable Mfg. Co., 578 F.3d at 502; Bowen, 488 U.S. at 208-09.

However, here, no such power was conferred by Congress. Rather, the Budget Act simply states that the FCC shall prescribe regulations to implement the amendments to the TCPA. It does not confer any authority to promulgate retroactive rules. Similarly, even if such power was conferred by Congress through the Budget Act, the August 2016 Order still would not have retroactive effect because the FCC did not clearly state its intent for the FCC Rulemaking to be applied retroactively. Instead, the August 2016 Order does not, in any terms, state that the promulgated rules are to be retroactive and, thus, it may not be so applied.

### B.     NSI's Calls Were "Made Solely To Collect A Debt Owed To Or Guaranteed By The United States."

Cedeno also argues that, even if the Act did become effective upon enactment, NSI's request for summary judgment on the TCPA claims should be denied because "NSI has failed to establish . . . that its calls were made '**solely** to **collect**'" the debt at issue. (Response, p. 6–7 (emphasis in original).)  At bottom, Cedeno contends that, because NSI's calls may have had some "servicing-related purpose," such as, for example, assisting customers with repayment options, the calls were not made "solely to collect a debt." (Id., p. 7.) To put it mildly, however, Cedeno's interpretation is strained. In fact, this interpretation would seemingly limit the language of the Amendment to only taking payments. Such a limitation is not stated or implied, however,

and would do nothing to achieve the purpose of the Amendment – i.e., attempting to cure delinquencies on federal debt.

Indeed, here, it is undisputed that NSI was calling Cedeno in order to address his delinquent student loans. As Cedeno noted in his Opposition, NSI's corporate representative, Caitlin Hahn, testified as follows:

> Q. Ms. Hahn, what was the purpose of the phone calls to Mr. Cedeno?
>
> A. Off of reviewing the notes and review of the account, it would be to service his loans.
>
> Q. And when you say "service his loan," do you mean to collect a debt?
>
> MS. VAN HOOSE: Object to form.
>
> A. I mean to provide assistance to Mr. Cedeno to resolve his delinquency.
>
> Q. So the purpose of the calls was not to collect a debt?
>
> MS. VAN HOOSE: Asked and answered.
>
> A. Ultimately it would be to resolve the delinquency. Whether that meant we were taking a payment or whether that meant we were providing a different option for the customer, it's to service and assist the customer in their best interest.

(Caitlin Hahn Deposition, 154: 8–25.) Based on Cedeno's construction of the Amendment, a loan servicer could only take a payment, and not offer a borrower a more advantageous option to cure a delinquency, during a collection call. This cannot be Congress's intended result.

Indeed, in the August 2016 Order, the FCC explained that the phrase "solely to collect a debt" applies to "debts that are delinquent at the time the call is made or to debts that are at imminent risk of delinquency as a result of the terms or operation of the loan program itself." See August 2016 Order at 7, ¶ 14. Elaborating further, the FCC stated that:

> Certain calls to service a debt owed to or guaranteed by the government may be so closely tied to an imminent and non-speculative risk of delinquency as to also

>be "solely to collect a debt." These calls pertain to specific, time-sensitive events that affect the amount or timing of payments due. Once these time-sensitive events are sufficiently imminent, calls about these events are no longer just about a debt, but are solely about the collection of a debt.

Id. at 7–8, ¶ 16. Thus, Cedeno's construction of the phrase is contrary even to the August 2016 Order.

### C. NSI Is Not A Debt Collector Within The Meaning Of The FDCPA.

In response to NSI's position that it is not a debt collector, Cedeno contends that some of the authority that NSI cites is inapposite, and that the rest of the authority is "stale" and incorrect. These contentions fail, however.

For instance, with respect to the decisions that he finds inapposite, Cedeno fails to identify any meaningful points for distinction. For instance, in attempting to distinguish Pelfrey v. Educ. Credit Mgmt. Corp., 71 F. Supp. 2d 1161 (N.D. Ala. 1999), Cedeno notes that the defendant was a guaranty agency, and that the case was decided on the basis of a "bona fide fiduciary obligation," which is not at issue here. (Response, pp. 9–10.) But at the same time, Cedeno ignores that, in reviewing case law under the FDCPA, the Pelfrey court explained that "student loan servicer[s] [are] not subject to the FDCPA." Pelfrey, 71 F. Supp. 2d at 1170. Similarly, in attempting to distinguish Horton v. HSBC Bank, No. 1:11-CV-3210-TWT, 2013 U.S. Dist. LEXIS 78612 (N.D. Da. June 4, 2013), Cedeno argues that it is "not particularly supportive of NSI's position in that it merely dismissed an FDCPA claim because the contention in the complaint that the defendant was a debt collector was conclusory and unsupported by proper allegations of fact." (Response, p. 10.) Again, Cedeno ignores the important point – i.e., the dismissed claim was against a student loan servicer.

Likewise, Cedeno's criticism of the remaining authority as "stale" or incorrect has no basis. First, and obviously, Eleventh Circuit courts consistently follow "old" precedent. See,

e.g., United States v. Madden, 733 F.3d 1314, 1319 (11th Cir. 2013) ("When we have conflicting case law, we follow our oldest precedent."); M/V Sea Lion V v. Reyes, 23 F.3d 345 (11th Cir. 1994) ("These decisions may be old, but they are old precedent, and we are bound to follow them."). Further, and in any event, the decisions were issued between 1985 and 1998, which is simply not that long ago. Second, while Cedeno argues that these decisions are incorrect, he also strangely concedes that they "support[] [NSI's] position." (Response, p. 10.) In fact, Cedeno points out an additional case that supports NSI's position. (Id.) Nevertheless, Cedeno argues that these four cases "go awry" because "unlike the original creditor or assignee before default described in the exception" on which the decisions relied, a student loan servicer "neither 'originates' a debt nor 'obtains' that debt." (Id., p. 11.) Cedeno's argument fails, though, because courts, including those in the Eleventh Circuit, routinely hold that the original servicer of a loan is not a debt collector. See, e.g., Fenello v. Bank of Am., N.A., 926 F. Supp. 2d 1342, 1350–51 (N.D. Ga. 2013) (citing cases) (holding that the successor by merger to an original loan servicer was not a debt collector under the FDCPA because it stood in the shoes of the original loan servicer); Meyer v. Citimortgage, Inc., No. 11-13432, 2012 U.S. Dist. LEXIS 19548, at *24 (E.D. Mich. Feb. 16, 2012) (holding defendant was not a debt collector under the FDCPA because "[it] is the successor by merger to . . . the originating lender and mortgagee, and therefore it is impossible for the loan to have been in default at the time [defendant] received its interest").

Finally, Cedeno cites McCaskill v. Navient Solutions, Inc., 178 F. Supp. 3d 1281 (M.D. Fla. 2016), a case against NSI in which Cedeno's counsel was involved. In McCaskill, however, there was no claim against NSI for violation of the FDCPA. Accordingly, Cedeno's reliance on McCaskill is completely misguided.

### III. Conclusion

For the foregoing reasons and those set forth in the Motion, NSI respectfully requests that this Court grant summary judgment in favor of NSI on Cedeno's claims under the TCPA for phone calls made after November 2, 2015 and on his claim under the FDCPA.

              Respectfully submitted,

              NAVIENT SOLUTIONS, INC.


              By:/s/ Rachel A. Morris
                Rachel A. Morris

Rachel A. Morris, Esq.
Florida Bar No. 0091498
SESSIONS, FISHMAN, NATHAN & ISRAEL, L L C.
3350 Buschwood Park Drive, Suite 195
Tampa, FL 33618
Telephone: (813) 890-2469
Facsimile: (866) 466-3140
ramorris@sessions.legal

Dated:  December 12, 2016

## CERTIFICATE OF SERVICE

I hereby certify that, on December 12, 2016, a copy of the foregoing **DEFENDANT NAVIENT SOLUTIONS, INC.'S REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT** was served by electronic mail on the party listed below:

> William Peerce Howard, Esq.
> The Consumer Protection Firm, PLLC
> 210 A South MacDill Avenue
> Tampa, FL  33609
> Tel: (813) 500-1500
> Fax: (813) 435-2369
> Billy@TheConsumerProtectionFirm.com
> Attorneys for Plaintiff

/s/ Rachel A. Morris
Attorney