IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ISMAEL CEDENO,

        Plaintiff,

v.

NAVIENT SOLUTIONS, INC.,

        Defendant.

Case 0:16-cv-61049-UU

**DEFENDANT NAVIENT SOLUTIONS, INC.'S
RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Navient Solutions, Inc. ("NSI"), by and through undersigned counsel, in response to the Motion for Partial Summary Judgment (the "Motion") filed herein by plaintiff Ismael Cedeno ("Cedeno") states as follows:

**I.    INTRODUCTION**

By his Motion, Cedeno seeks to impose liability on NSI for supposed violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, et seq. ("FCCPA"). The TCPA prohibits, among other things, making a call to a cellular telephone through the use of an automated telephone dialing system without the called party's "prior express consent." Calls made without the requisite consent are subject to statutory damages, in the amount of $500 for negligent violations or up to $1,500 for willful violations. Cedeno maintains that NSI made numerous calls to him after he revoked the requisite consent and, thus, in willful violation of the TCPA. Meanwhile, the FCCPA regulates the acts and practices of debt collectors. Cedeno avers that NSI engaged in harassing behavior in its communications with him, in violation of the

FCCPA. As detailed below, however, Cedeno is not entitled to summary judgment on the TCPA or FCCPA claims based on disputed facts and well-settled law.

<u>First</u>, contrary to Cedeno's suggestions, NSI denies that he "clearly" revoked consent under the TCPA. Cedeno asserts that he revoked consent during telephone conversations on June 18 and 22, 2015, but a review of those conversations demonstrates no revocation. Instead, at best, there are misunderstandings between the parties, the parties talk over and interrupt one another and Cedeno does not even identify himself. Moreover, courts in the Eleventh Circuit consistently refuse to decide the issue of revocation at the summary judgment stage, reasoning that it is an issue of fact for the jury to decide. Indeed, NSI is aware of no decision in which an Eleventh Circuit court decided the issue of revocation in favor of a plaintiff on summary judgment.

<u>Second</u>, Cedeno is not entitled to summary judgment on the issue of willfulness. As an initial matter, given that Cedeno's assertions of revocation fail, NSI's phone calls after the supposed revocations cannot be said to be willful. Further, NSI takes significant measures to ensure that it complies with the TCPA, and whether the agents making the phone calls are following these measures presents a question of fact. This is especially so because the willfulness standard in the Eleventh Circuit requires a defendant to know that it was undertaking conduct that violates the TCPA. And, again, as with revocation, NSI is aware of no decision in which an Eleventh Circuit court decided the issue of willfulness in favor of a plaintiff on summary judgment.

<u>Third</u>, even setting aside the issues of revocation and willfulness, Cedeno's TCPA claims are barred as a matter of law as to calls made after November 2, 2015. The Bipartisan Budget Act of 2015 (the "Budget Act"), effective as of November 2, 2015, amended the TCPA to

eliminate the prior express consent requirement for calls "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. 227(b)(1)(A)(iii). Because NSI was attempting to contact Cedeno with respect to a federal student loan, it has no liability under the TCPA for phone calls after the Budget Act's effective date.[1]

<u>Fourth</u>, summary judgment on Cedeno's FCCPA claim should be denied based on disputed facts. As Cedeno himself concedes, courts do not resolve FCCPA claims on summary judgment, and instead leave determinations of liability to the jury. Indeed, as demonstrated by the very case law that Cedeno cites, no precedent supports a grant of summary judgment in favor of the plaintiff on a claim under Section 559.72(7) of the FCCPA. Moreover, as with Cedeno's willfulness argument, the FCCPA claim rests on the flawed premise that the June 18 and 22 phone calls constitute revocations.

<u>Fifth</u>, and finally, Cedeno's FCCPA claim also is subject to preemption. The Higher Education Act of 1965 preempts state law, like the FCCPA, with respect to claims challenging collection activities undertaken by servicers of federal student loans.

For all of the reasons set forth above, Cedeno is not entitled to summary judgment. Accordingly, the Motion should be denied in its entirety.

## II. RESPONSE TO STATEMENT OF MATERIAL FACTS

1. Undisputed.
2. Undisputed.
3. Undisputed.

---

[1] Indeed, NSI has filed its own Motion for Partial Summary Judgment, raising this defense. That Motion will be fully briefed on January 3, 2017.

4. Disputed. A review of the call logs clearly demonstrates that NSI did not call Cedeno "up to six times per day, nearly every day." (NSI Call Log, bates nos. NSI0000217–NSI0000262, attached as Ex. B to Cedeno's Motion.)

5. Undisputed.

6. Disputed. Four of the phone calls were not made with an ATDS. (Id.)

7. Undisputed.

8. Undisputed.

9. Undisputed.

10. Undisputed.

11. Undisputed.

12. Undisputed.

13. Undisputed.

14. Undisputed.

15. Disputed. NSI did not call Cedeno on Christmas day. (Id.)

16. Disputed. NSI called Cedeno 525 times after the June 18, 2015 phone call. (Id.)

17. Disputed. NSI called Cedeno 521 times after the June 22, 2015 phone call. (Id.)

18. Disputed. Cedeno stated that he does not know what his actual damages are. (Deposition of Ismael Cedeno ("Cedeno Dep."), at 68:23–68:25, attached as Ex. A to Cedeno's Motion.)

19. Disputed. Cedeno stated that he does not know what his actual damages are. (Id.)

20. Undisputed.

### III. ADDITIONAL MATERIALS FACTS

**Navient Solutions, Inc.**

1. NSI is engaged in the business of servicing student loans. (Deposition of Caitlin Hahn, ("Hahn Dep."), at 29:23–29:25, attached as Ex. D to Cedeno's Motion.) Some of those loans, like Cedeno's, are owned by the United States Department of Education ("ED"), and NSI services the loans on its behalf. (Id., at 92:20–93:4.)

2. The servicing of loans owned or guaranteed by ED is governed by a complex set of federal regulations, pursuant to the Higher Education Act of 1965 (the "HEA"), as amended. See 34 C.F.R. §§ 682.400-682.423, 685.300-685.309. However, as relevant here, when federal student loans become past due, NSI is required to contact delinquent borrowers. 34 C.F.R. § 682.411(c)-(f).

**Cedeno And The Loan**

3. Cedeno applied for and received a federally guaranteed Consolidation loan in May 2006 (the "Loan"), which consolidated various Stafford loans previously taken out by Cedeno. NSI began servicing the Loan at or near inception, when it was in good standing and prior to default. (Declaration of Carl Cannon, ¶ 5, attached hereto as Ex. 1.)[2]

4. The Loan most recently became due for repayment on April 25, 2015, following the conclusion of various, lengthy periods of deferment or forbearance. Cedeno made no payments on the Stafford loans prior to consolidation. He also has not made a payment since the Loan reentered repayment and, as a result, the Loan has been delinquent since April 2015. (Id., ¶ 6.)

**Consent To Contact Plaintiff**

---

[2] There is a minor error in this declaration. The declaration states that the Loan became due for repayment on April 25, 2016, and that the Loan has been delinquent since April 2016. The declaration should state that the Loan became due for repayment on April 25, 2015, and that the Loan has been delinquent since April 2015.

-5-

5. Cedeno provided consent to contact him with an autodialer in his promissory notes, including on June 21, 2010, where he agreed:

> I authorize my schools, ED, and their respective agents and contractors to contact me regarding my loan request or my loan, including repayment of my loan, at the current or any future number that I provide for my cellular telephone or other wireless equipment or artificial or prerecorded voice or text messages.

(Resps. of Def. NSI to Pl.'s First Set of Interrogs., No. 2, attached hereto as Ex. 2.)

6. Cedeno provided further consent to contact him at his cellular telephone number on May 31, 2011 when he accessed the website provided by NSI (then known as Sallie Mae, Inc.) for borrowers, updated his contact preferences and agreed:

> By providing my telephone number, I authorize Sallie Mae, Inc., its affiliates and agents to contact me at such number using any means of communication, including, but not limited to, calls placed to my cellular phone using an automated dialing device, calls using prerecorded messages and/or SMS text messages, regarding any current or future loans owned or serviced by Sallie Mae, Inc., its affiliates and agents, even if I will be charged by my service provider(s) for receiving such communications.

(Id.)

7. Further, pursuant to the operation of the Class Action Settlement Agreement and Final Order in the proceeding entitled Mark Arthur, et al. v. Sallie Mae, Inc., et al., Case No. 10-cv-00198-JLR on the docket of the United States District Court for the Western District of Washington (where Cedeno is a settlement class member), NSI possessed prior express consent to contact Cedeno on his cellular telephone with the use of an "automatic telephone dialing system" and/or an "artificial or prerecorded voice" as of the Effective Date of the Settlement – i.e., September 17, 2012.  (Id.)

8. Cedeno contends that, in calls that took place on June 18 and 22, 2015, he revoked his consent for calls to his cell number.  As discussed below, however, there is a dispute of fact as to whether Cedeno revoked consent during those calls.

## IV. ARGUMENT

### A. Legal Standard

Summary judgment should be granted only "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). A court may not make credibility determinations or engage in any weighing of the evidence at the summary judgment stage. See, e.g., Munnings v. Fedex Ground Package Sys., No. 6:07-cv-282-Orl-19KRS, 2008 U.S. Dist. LEXIS 33041, at *54 (M.D. Fla. Apr. 22, 2008) (citing Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 919 (11th Cir. 1993)). Indeed, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Cesaire v. Med. Servs., No: 6:15-cv-1886-Orl-28DCI, 2016 U.S. Dist. LEXIS 162615, at *4 (M.D. Fla. Nov. 23, 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

### B. Cedeno Is Not Entitled To Summary Judgment On His TCPA Claims.

#### 1. Disputed Issues Of Fact Preclude A Finding That Cedeno Revoked Consent To Be Called.

In determining whether a consumer has successfully revoked consent, "the common law concept of consent" applies. Schweitzer v. Comenity Bank, 158 F. Supp. 3d 1312, 1315 (S.D. Fla. 2016) (citing Osorio v. State Farm Bank F.S.B., 746 F.3d 1242, 1255 (11th Cir. 2014)). Specifically, "consent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct." Id. (citing Osorio, 746 F.3d at 1253). Courts consistently recognize that revocation involves an issue of material fact that is not properly resolved in the summary judgment context, but instead should go to the jury. See

Osorio, 746 F.3d at 1256 (holding that "the question of whether [plaintiff] effectively revoked whatever consent [defendant] might have had to call . . . should proceed to a jury" because "it is exactly the kind of factual dispute that cannot properly be resolved on summary judgment.").[3]

For instance, in Alvarado v. Credit Prot. Ass'n, L.P., plaintiff asserted that he revoked consent when he sent defendant a "pre-suit letter." No. 8:14-cv-447-T-33TGW, 2015 U.S. Dist. LEXIS 52820, at *30–31 (M.D. Fla. Apr. 22, 2015). The defendant argued that the pre-suit letter failed to revoke consent because, among other things, it was "devoid of almost all personal identifying information." Id. at *31. The court therefore denied summary judgment, explaining:

> A review of the parties' arguments and the record before the Court demonstrates that there remains a question of fact as to whether Plaintiff effectively revoked the prior consent given to Defendant. Plaintiff contends that he revoked any consent when his attorney sent Defendant the pre-suit letter. Defendant, however, argues that the pre-suit letter was insufficient to revoke Plaintiff's prior consent. This is exactly the kind of factual dispute that cannot properly be resolved on summary judgment.

Id. at *32.

Further, in Brown v. Account Control Tech., Inc., the court denied summary judgment because the "Plaintiff and Defendant dispute[d] whether consent was . . . revoked during the phone calls . . . ." No. 0:13-62765-CIV-DIMITROULEAS, 2015 U.S. Dist. LEXIS 180605, at *10 (S.D. Fla. Jan. 15, 2015). Importantly, the calls at issue were recorded. Id. Nevertheless,

---

[3] See also Brown v. Account Control Tech., Inc., No. 0:13-62765-CIV-DIMITROULEAS, 2015 U.S. Dist. LEXIS 180605, at *10 (S.D. Fla. Jan. 15, 2015); Hitchman v. Nat'l Enter. Sys., No. 12-61043-Civ-MARRA/MATTHEWMAN, 2014 U.S. Dist. LEXIS 30623, at *11 (S.D. Fla. Mar. 10, 2014); Alvarado v. Credit Prot. Ass'n, L.P., No. 8:14-cv-447-T-33TGW, 2015 U.S. Dist. LEXIS 52820, at *32 (M.D. Fla. Apr. 22, 2015); Soulliere v. Cent. Fla. Invs., Inc., No. 8:13-CV-2860-T-27AEP, 2015 U.S. Dist. LEXIS 36858, at *18 (M.D. Fla. Mar. 24, 2015); Nev. Walker v. Transworld Sys., No: 8:14-cv-588-T-30MAP, 2015 U.S. Dist. LEXIS 17982, at *5 (M.D. Fla. Feb. 13, 2015); Smith v. MarkOne Fin., LLC, No. 3:13-cv-933-J-32MCR, 2015 U.S. Dist. LEXIS 11803, at *9–10 (M.D. Fla. Feb. 2, 2015); Walker v. Transworld Sys., No: 8:14-cv-588-T-30MAP, 2014 U.S. Dist. LEXIS 174136, at *7 (M.D. Fla. Dec. 17, 2014); Gray v. Morgan Drexen, Inc., No: 2:13-cv-83-FtM-29DNF, 2014 U.S. Dist. LEXIS 78079, at *9 (M.D. Fla. June 9, 2014).

the court explained that "factual issues remain as to whether Plaintiffs' statements can be construed as . . . revoking . . . consent . . . ." Id.

Likewise, here, factual issues exist as to whether the June 18 and 22, 2015 phone calls could be construed as revocations of consent.  For instance, in the June 18 phone call, at a minimum, there was a misunderstanding between Cedeno and NSI's agent:

> MR. THOMAS:·  Okay.·  And now with that telephone number, I just want to make sure I cover this to help us contact you more efficiently, you're telling me, the Bank named Navient and their respective facilities and agents can contact you at this number using the autodialer -- actually, let me rephrase that.·  To help us contact you more efficiently, the Bank named Navient and their respective facilities can send text messages to your address number using the autodialer (inaudible).
> MR. CEDENO:·  I don't want anybody to call me at this number.
> MR. THOMAS:·  Okay.·  So no text messaging? That's what I'm speaking of.
> MR. CEDENO:·  No.

(Cedeno Dep., at 41:7–41:22, attached as Ex. A to Cedeno's Motion.)  Plainly, one reasonable interpretation of this conversation is that, when Cedeno stated that he did not want anyone to call him at his number, the agent understood him to indicate that he did not want text messages.  That is what the agent was talking about, and even Cedeno agrees that this is a reasonable interpretation:

> Q.     Do you think that it's reasonable for the agent to have documented that call as that you, Mr. Cedeno, did not want any text messages?
> . . .
> A.     Yes.

(Id., at 44: 22–45:1.)  Hence, this call cannot be deemed a revocation on summary judgment.

Similarly, the June 22 phone call raises an issue of fact.  The call proceeded as follows:

> MS. KOMBAT:·  Hello, is Ismael --
> MR. CEDENO:·  Hello?
> MS. KOMBAT:·  Hello, is Ismael Cedeno --
> MR. CEDENO:·  Who's calling?·  Who is calling me?
> MS. KOMBAT:·  Well, my name is Alisha [Kombat] and I'm calling from Navient Department of Education Loan Services.
> MR. CEDENO:·  Why are you calling me?

-9-

> MS. KOMBAT:· We are reaching out in reference to your student loan.
> MR. CEDENO:·Well, (inaudible) don't call me anymore.· If you call me anymore, I'm going to report you that you're harassing me.·
> I'm at work right now.
> MS. KOMBAT:· This call is being recorded --
> MR. CEDENO:· -- so don't call me anymore.
> MS. KOMBAT:· Well, you gave us permission, so we'll call you again.
> MR. CEDENO:· Okay?· I'm -- I'm making payments.
> MS.  KOMBAT:· All right.
> MR. CEDENO:· So don't call me anymore.  Good-bye.
> MS. KOMBAT:· Okay.· Talk to you later.

(Id., at 52:21–53:21.)  In the Motion, Cedeno argues that he "clearly revoked consent" in this conversation, but the audio recording proves otherwise – i.e., the parties are talking over and interrupting one another throughout the conversation.  Moreover, the agent was attempting to obtain Cedeno's personal identifying information, which Cedeno did not provide.  Alvarado, 2015 U.S. Dist. LEXIS 52820, at *31 (denying summary judgment where the alleged revocation was "devoid of almost all personal identifying information").  Thus, again, whether this exchange constitutes a revocation is a question that should be left to the trier of fact.

### 2. Issues Of Fact Also Preclude A Finding Of Willfulness On Summary Judgment.

In the Eleventh Circuit, "[t]he requirement of 'willful[] or knowing[]' conduct requires the violator to know he was performing that conduct that violates the statute." Lary v. Trinity Physician Fin. & Ins. Servs., 780 F.3d 1101, 1107 (11th Cir. 2015).  This is because, if courts "interpreted the statute to require only that the violator knew he was making a 'call' or sending a fax, the statute would have almost no room for violations that are not 'willful[] or knowing[].'" Id. (citing Harris v. World Fin. Network Nat'l Bank, 867 F. Supp. 2d 888, 895 (E.D. Mich. 2012) ("Such a broad application of 'willful[]' or 'knowing' would significantly diminish the statute's distinction between violations that do not require an intent, and those willful[] and knowing violations that [C]ongress intended to punish more severely.")).  Therefore, as even

-10-

Cedeno notes in his Motion, "the Eleventh Circuit has observed that a 'willfull or knowing' violation requires more than a showing that the caller know it was making a 'call.'" (Motion, p. 14.) This is a very difficult showing to make, and as with revocation, courts often find that a question of material fact exists on the issue of willfulness.

For instance, in Brown v. Account Control Tech., Inc., plaintiff brought claims for willful violations of the TCPA. The defendant's policies prohibited "calling cell phones without permission," and the agents placing the calls at issue had access to information regarding whether the number at issue was a cellular phone number. 2015 U.S. Dist. LEXIS 180605, at *10–11. Nevertheless, the court held "that genuine questions of material fact exist as to whether any violations of the TCPA were willful or knowing, and denie[d] summary judgment on this issue with respect to both parties." Id. at *11–12. The court reasoned that it was "unclear whether the agents actually saw [the] information, and to what extent such information on the [system] interface suggested that the number was linked to a cell phone." Id. at 11.

Likewise, here, a genuine issue of material fact exists as to whether the alleged violations were willful. As with the defendant in Brown, NSI maintains policies and procedures designed to train employees, implement infrastructure and manage technology to ensure compliance with the TCPA and other applicable laws. (Resps. of Def. NSI to Pl.'s First Set of Interrogs., No. 2, attached hereto as Ex. 2.) In addition, because Cedeno did not revoke consent in the June 18 and 22, 2015 conversations, the agents, of course, did not make notations indicating that Cedeno revoked consent. Accordingly, the agents making the subsequent phone calls did not possess information indicating that they should not be calling Cedeno. Against this background, a determination of willfulness cannot be made. See Pollock v. Bay Area Credit Serv., No.: 08-61101-Civ-Dimitrouleas/Snow, 2009 U.S. Dist. LEXIS 71169, at *31–32 (S.D. Fla. Aug. 13,

2009) (denying summary judgment on the issue of willfulness even though defendant "admitted that it knew of the [TCPA's] prohibitions, yet had a practice and policy of telephoning consumers without any knowledge of whether it was a cell phone and had no procedures in place to determine this").

It also should be noted that Cedeno's further arguments in support of willfulness are unavailing. As an initial matter, Cedeno points to numerous lawsuits filed against NSI, which are completely irrelevant. (Motion, pp. 13–14.) Again, NSI maintains policies and procedures designed to train employees, implement infrastructure and manage technology to ensure compliance with the TCPA and other applicable laws. (Resps. Of Def. NSI to Pl.'s First Set of Interrogs., No. 2, attached hereto as Ex. 2.) Moreover, the number of complaints filed against NSI is a measure of the size of its business, not of willful disregard for the law. Thus, Cedeno's reliance on these complaints is misplaced.

Additionally, while Cedeno cites to several decisions in which courts awarded treble damages for willful violations of the TCPA, Cedeno fails to provide any from the Eleventh Circuit in which such an award was made on summary judgment (and it appears that no such precedent exists). To the contrary, and as recently explained by a court in the Middle District of Florida denying summary judgment on the issue of willfulness, the three Eleventh Circuit cases on which Cedeno relies "involved a default judgment setting in which there was uncontroverted evidence of continued communications after a clear request that calls cease." Cesaire v. Med. Servs., No: 6:15-cv-1886-Orl-28DCI, 2016 U.S. Dist. LEXIS 162615, at *19 n.16 (M.D. Fla. Nov. 23, 2016). As the Cesaire court noted, these cases "are factually distinguishable." Id. at *19.

Meanwhile, the decisions that Cedeno cites from other jurisdictions are distinguishable, too. In Sengenberger v. Credit Control Services, Inc., the Northern District of Illinois granted treble damages on summary judgment, but did so by applying a different standard than that used by Eleventh Circuit courts. No. 09 C 2796, 2010 U.S. Dist. LEXIS 43874, at *16–17 (N.D. Ill. May 5, 2010). The court defined willfulness as meaning that "an action was intentional," irrespective "of whether the defendant knew that it was acting in violation of the statute." Id. This is in stark contrast to the willful or knowing standard that the Eleventh Circuit uses, which requires a defendant to "know he was performing that conduct that violates the statute." Lary, 780 F.3d at 1107. Further, in A Fast Sign Co., Inc. v. Am. Home Servs., Inc., a state court case, the award of treble damages came "[a]t the conclusion of a bench trial." 734 S.E.2d 31, 32 (Ga. 2012). Accordingly, the case law simply does not support the granting of treble damages for willful violations of the TCPA in the context of summary judgment.[4]

### 3. Further, Under the Budget Act, Cedeno's TCPA Claims Fail For Calls Made After November 2, 2015.

On November 2, 2015, the President signed the Budget Act into law. Section 301 of the Budget Act (the "Amendment") provides that autodialed calls are exempt from the TCPA's prior express consent requirement if they are "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). Here, Cedeno proposes to recover for autodialed calls made by NSI on the Loan after November 2, 2015. However, very clearly, because these calls took place after the effective date of the Amendment, no prior express

---

[4] Perhaps in recognition of this, Cedeno also asks the court to apply a "recklessness" standard, and cites to a United States Supreme Court case outside of the TCPA context, and an Eighth Circuit case. (Motion, p. 15.) The Eleventh Circuit case law on willfulness is clear, though. Accordingly, the Court should not be persuaded by Cedeno's attempt to use a more plaintiff-friendly standard that finds no support in this Circuit.

consent requirement applied, and Cedeno's purported revocation of such consent has no meaning.

Moreover, the calls made to Cedeno are precisely of the type that Congress intended to permit through the Amendment. For example, in the lead-up to passage of the Budget Act, ED issued a report calling for Congress to "change the law to ensure that servicers can contact borrowers using modern technology." See "Strengthening the Student Loan System to Better Protect All Borrowers," U.S. Department of Education, October 1, 2015, at p. 16 <available at http://www2.ed.gov/documents/press-releases/strengthening-student-loan-system.pdf> (last viewed May 4, 2016). ED argued that:

> If servicers are able to contact a borrower, they have a much better chance at helping that borrower resolve a delinquency or default. Many student loan borrowers, especially those that may just be graduating, move frequently in addition to no longer having landline phone numbers. As such, it can be difficult for servicers to find a borrower except by using a cell phone number. Current Federal law prohibits servicers from contacting borrowers on a cell phone number using an auto-dialer unless the borrower has provided explicit consent to be contacted at that number. With phone numbers changing or being reassigned on a regular basis, it is virtually impossible for servicers to use auto-dialing technology. The President's 2016 Budget proposed amending this law to allow the use of automated dialers to contact borrowers to inform them of their federal repayment obligations and benefits like Pay As You Earn, or Rehabilitation, in the case of a defaulted borrower.

Id. Thus, based on the Amendment and ED's sound, underlying rationale in requesting it, the Court should find that Plaintiff's claims for phone calls after November 2, 2015 fail.

Furthermore, the Court should reject any contention from Cedeno that this outcome somehow changes in light of rulemaking issued by the Federal Communications Commission (the "FCC") on August 11, 2016. The Budget Act directed the FCC to "prescribe regulations to implement the amendments made" by Section 301 within nine months of enactment. See Budget Act at § 301(b). The FCC did just that on August 11, 2016, when it released a Report and Order to implement the Amendment. See In the Matter of Rules and Regulations Implementing the

-14-

Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, FCC 16-99 (August 11, 2016) (the "August 2016 Order"), attached hereto as Ex. 3.  The August 2016 Order appended the FCC's Final Rules implementing the Amendment; however, the Final Rules are not yet effective.  As the August 2016 Order makes clear, because certain of the Final Rules implicate the Paperwork Reduction Act, as a whole, the rules will not become effective "until 60 days after the Commission publishes a Notice in the Federal Register indicating approval of the information collection by the Office of Management and Budget (OMB)."  See August 2016 Order at 24, ¶¶ 59-60.  Thus, the Final Rules are not in place and, until they are, the Amendment applies, as written.

### C. Cedeno Is Not Entitled To Summary Judgment On His FCCPA Claim.

#### 1. Disputed Issues Of Fact Preclude Summary Judgment On Cedeno's FCCPA Claim.

As Cedeno acknowledges in his Motion, "FCCPA claims are typically the type that cannot be resolved on summary judgment . . . ."  (Motion, p. 17.)  Instead, "Florida courts have placed the determination of elements comprising FCCPA violations within the jury's province."  Ortega v. Collectors Training Inst. of Ill., Inc., NO. 09-21 744-CIV-GOLD/McALILEY, 2011 U.S. Dist. LEXIS 6282, at *28–29 (S.D. Fla. Jan. 24, 2011).  Thus, in the context of a claim under Section 559.72(7), the Section on which Cedeno seeks summary judgment, "[w]hether communications are so frequent so as to be reasonably expected to harass 'is ordinarily the business of juries, not of judges.'"  Id. (citing Story v. J. M. Fields, Inc., 343 So. 2d 675, 677 (Fla. Dist. Ct. App. 1977).

Thus, in the Motion, because courts regularly deny summary judgment where plaintiff complains only of a high volume of calls, Cedeno argues that NSI's calls were harassing above and beyond their frequency.  See Lardner v. Diversified Consultants, Inc., 17 F. Supp. 3d 1215,

1225 (S.D. Fla. 2014) ("Summary judgment is routinely granted in favor of debt collectors where the party . . . does not present evidence of harassing conduct other than a high volume of calls."). Cedeno avers that, because the June 18 and 22, 2015 phone calls constitute revocations of consent, "[t]here can be no other rational purpose for this absurd number of calls other than a design to break the will of the Plaintiff and force him to answer calls . . . ." (Motion, p. 18.) In support of this assertion, Cedeno relies on Story v. J.M. Fields, Inc., which explains that communications may be considered "harassing in their frequency . . . when they continue after . . . reasonable efforts at persuasion and negotiation have failed." 343 So. 2d 675, 677 (Fla. Dist. Ct. App. 1977). This argument fails, though, on multiple levels.

First, the argument rests on the flawed premise that the June 18 and 22, 2015 phone calls constitute clear revocations of consent, which they do not. However, even if they did, Cedeno does not succeed under existing law. To the contrary, in Story v. J.M. Fields, Inc., the only decision on which Cedeno relies, the court held that 100 calls in a 5-month period, occurring after the plaintiff told the agent "to quit calling and go to court," presented a question for the jury. Id. at 677. Similarly, in Meadows v. Franklin Collection Service, Inc., the plaintiff received 300 phone calls over a two and a half year period "despite being informed . . . that the debts were not [plaintiff's]." 414 Fed. Appx. 230, 233 (11th Cir. 2011). Nevertheless, the court found "a genuine issue of material fact as to whether [defendant] caused [plaintiff's] telephone to ring with the intent to annoy or harass." Id. at 233–34; see also Ortega, 2011 U.S. Dist. LEXIS 6282, at *28–29 ("[I]t is a question of fact whether the number of telephone calls and the content of the calls constitutes harassment under the FCCPA.").

        **2.**       **Furthermore, And Separately, Cedeno's FCCPA Claim Is Defeated By Preemption Under The HEA.**

The HEA contain an express preemption section, as follows: The "provisions of this section . . . [p]reempt any State law, including State statutes, regulations, or rules, that would conflict with or hinder satisfaction of the requirements or frustrate the purposes of this section." 34 C.F.R. § 682.411(o). This is "essentially the same standard of review as conflict preemption." Williams v. Educ. Credit Mgmt. Corp., 88 F. Supp. 3d 1338, 1345 (M.D. Fla. 2015). Conflict preemption exists where, as here, "state law stands as an obstacle to achieving the objectives of the federal law." Id. at 1344 (citing Cliff v. Payco Gen. Am. Credits, Inc., 363 F.3d 1113, 1122 (11th Cir. 2004)).

Williams demonstrates the appropriate analysis. There, plaintiff brought a Section 559.72(7) claim for actions taken by defendant's agent in its attempt to collect on plaintiff's federal student loans. Id. at 1341. Defendant, a guaranty agency, was required under the HEA to "engage in reasonable and documented collection activities on a loan on which it pays a default claim filed by a lender." Id. at 1346 (quoting 34 C.F.R. § 682.410(b)(6)(i)). The court held that Section 559.72(7) was preempted, reasoning that "[s]ubjecting guaranty agencies to litigation and trial to resolve whether their debt collection actions were 'reasonable' -- a determination that is inherently fact-intensive and subjective -- would have a chilling effect on debt collection efforts and would hinder the satisfaction of the requirements of the federal regulation." Id. (internal citations omitted).

The same situation is presented here. NSI was contacting Cedeno in an attempt to resolve the delinquency regarding his unpaid, federal Consolidation loan. (Hahn Dep., at 154:8–154:16, attached as Ex. D to Cedeno's Motion.) Per HEA regulations, NSI is required to contact delinquent borrowers when federal student loans become past due. 34 C.F.R. § 682.411(c)-(f).

As in <u>Williams</u>, subjecting NSI to Section 559.72(7)'s restrictions would have a "chilling effect" on efforts to satisfy the requirements of the HEA.  See <u>Williams</u>, 88 F. Supp. 3d at 1346.

## V. CONCLUSION

For the foregoing reasons, NSI respectfully requests that this Court deny the Motion in its entirety.

Respectfully submitted,

NAVIENT SOLUTIONS, INC.

By:/s/ Rachel A. Morris
By Its Attorneys

Rachel A. Morris, Esq.
Florida Bar No. 091498
Dayle M. Van Hoose, Esq.
Florida Bar No. 0016277
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
3350 Buschwood Park Drive, Suite 195
Tampa, FL 33618
Telephone: (813) 890-2469
Facsimile: (866) 466-3140
rmorris@sessions.legal
dvanhoose@sessions.legal

## CERTIFICATE OF SERVICE

I certify that on this 30th day of December 2016, a copy of the foregoing was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system or U.S. First Class Mail including plaintiff's counsel as described below. Parties may access this filing through the Court's system.

>William Peerce Howard, Esq.
>Stefan Alvarez, Esq.
>The Consumer Protection Firm, PLLC
>210 A South MacDill Avenue
>Tampa, FL  33609

/s/ Rachel A. Morris
Attorney