## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ISMAEL CEDENO,

     Plaintiff,

v.                            CASE NO.:   0:16-CV-61049-AOR

NAVIENT SOLUTIONS, LLC,

     Defendant.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT NAVIENT SOLUTIONS, LLC'S MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

The Plaintiff, Ismael Cedeno, by and through his undersigned counsel, hereby presents this response to Defendant Navient Solutions LLC's ("NSL") Motion for Certification of Interlocutory Appeal (Doc. 95), and states the following in opposition to the relief sought in that motion:

## I.    The Legal Standard For Certification Under 1292(b)

NSL implies that certification of an interlocutory appeal is a matter that should be taken lightly, blithely suggesting that "Southern District of Florida courts often have certified issues for interlocutory appeal" (Doc. 95 at 4).   To the contrary, the Eleventh Circuit has found "particularly persuasive" an "important passage emphasizing the limited scope of" interlocutory appeals contained within a Judicial Conference report discussing the legislation that enacted 1292(b).   *McFarlin v. Conseco Services, LLC*, 381 F.3d 1251, 1256 (11th Cir. 2004) (quoting H.R. 6238, Pub.L. No. 85–919, 72 Stat. 1770, 5260-61).   This passage stated as follows:

> [T]he appeal from interlocutory orders thus provided should and will be used only in exceptional cases where a decision of the appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases, where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided, as in the recent case of *Austrian v. Williams*, [198

> F.2d 697 (2d Cir.1952).] It is not thought that district judges would grant the certificate in ordinary litigation which could otherwise be promptly disposed of or that mere question as to the correctness of the ruling would prompt the granting of the certificate. The right of appeal given by the amendatory statute is limited both by the requirement of the certificate of the trial judge, who is familiar with the litigation and will not be disposed to countenance dilatory tactics, and by the resting of final discretion in the matter in the court of appeals, which will not permit its docket to be crowded with piecemeal or minor litigation.

*Id.*  To put it simply, "this garden-variety consumer law case" does not qualify for interlocutory review because it is not an "exceptional" case.  *Cooper v. Navient Sols., LLC*, No. 8:16-CV-3396-JSM-MAP, Dkt. 33 at 3 (M.D. Fla. May 25, 2017).[1]  Nor does it present the same risk of runaway expense as "antitrust and similar protracted cases."  Rather, this case, which is now ready for trial, clearly qualifies at this stage as "ordinary litigation which could otherwise be promptly disposed of."

## II.    There Are No Substantial Grounds For Disagreement On The Issue Of The Effects Of The Amendments Made By The Budget Act.

In its motion, NSL takes the illogical position that the statutory amendments made by the Bipartisan Budget Act of 2015, Pub. L. 114-74, § 301(a), 129 Stat. 584 (2015) ("Budget Act"), became immediately effect upon passage of the bill into law even while acknowledging that Congress expressly directed that the FCC prescribe regulations to "implement" these statutory changes within nine months.  Quite obviously, NSL is asking the court to ignore the extremely significant meaning of the word "implement," which has been defined as "to fulfill; carry out" or "to put into effect according to a definite plan or procedure." *Random House Kernerman Webster's College Dictionary* (2010).  To put NSL's arguments in other words, NSL's position is that Congress intended to strip federal borrowers of all protection under the TCPA and leave them bereft of such protections until such time as the FCC propounded

---

[1]  As discussed in greater detail below, the court in *Cooper* addressed a nearly identical motion for interlocutory appeal on this same issue by this same Defendant.

regulations to once again provide such protections.  As was implicitly recognized by this Court's order on summary judgment, this absurd notion quite simply cannot compete with the entirely much more reasonable interpretation that Congress intended to create a seamless transition by requiring that the statutory changes be **implemented** (i.e., be given effect) through the enactment of FCC regulations that would provide appropriate consumer protections.

It should also be noted that the courts do not have a clean slate in deciding these issues, as the FCC, which has express authority under the Budget Act to propound regulations to interpret the Budget Act's amendments, has provided binding guidance.  Specifically, the FCC has stated the following:

> As noted in the discussion above, two portions of our rules implicate the Paperwork Reduction Act (PRA). These portions involve the rules for the recording of a debtor's request to stop receiving autodialed, artificial-voice, and prerecorded-voice calls to collect a debt owed to or guaranteed by the United States, and rules for the conveyance of that stop-call request from one servicer or collector to another. Because these portions of our rules implicate the PRA, they will not become effective until 60 days after the Commission publishes a Notice in the Federal Register indicating approval of the information collection by the Office of Management and Budget (OMB).

> The remaining rules will not become effective until the rules requiring OMB approval become effective. While these remaining rules do not require OMB approval and could become effective immediately upon release of this *Order*, we determine that the consumer-protection rules regarding stopcall requests and conveyance of those requests are so integral to this regulatory scheme that the remaining rules should not become effective until the consumer-protection rules are in place. **The rules that could become effective immediately permit a caller to make calls—they specify how many calls may be made, who may make the calls, when the calls can be made, and to which numbers the calls may be made, among other things.** These rules give effect to one of the reasonable interpretations we have identified for Congress' passage of the Budget amendments: to make it easier for owners of debts owed to or guaranteed by the United States and their contractors to make calls to collect debts. But the second reasonable interpretation—to make it easier for consumers to obtain useful information about debt repayment—carries with it a consumer's prerogative to determine that the debtor does not want the information conveyed in the calls and to ask that the calls stop. The rules that give effect to this interpretation of Congress' intent are delayed by PRA requirements and OMB approval. **We**

**determine that the regulatory scheme we implement today must include both the ability for callers to make calls and the right of debtors to ask that calls stop—and that both portions of the regulatory scheme become effective simultaneously. To do otherwise would be to allow callers to make calls but to leave debtors with no consumer protections until OMB approval is complete.** We determine that both portions of the rules must become effective for the regulatory scheme to be effective.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, FCC 16-99, ¶¶'s 59–60 (August 11, 2016) (the "August 2016 FCC Order").  Contrary to NSL's efforts to mislead the Court with an out-of-context quote from a prior FCC order, it should be quite obvious from the above quote that the FCC entirely rejects NSL's position that the enactment into law of the Budget Act immediately permitted unconsented-to calls to be made to federal borrowers without restriction until such time as the regulations implementing the Budget Act amendments come into effect.  As such, the question that NSL proposes to address on appeal would not be reviewed *de novo* as might be true of most other issues of law, but rather would be reviewed under a virtually insurmountable "arbitrary and capricious" standard.  *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984) (noting "that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer," and that when "there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation[, s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.").  In light of the above, the prospect that the Eleventh Circuit might find error in this Court's summary judgment ruling is at best remote, thus making the proposed interlocutory appeal simply a waste of time.

Moreover, while the other arguments made by NSL are virtually irrelevant given the authoritative nature of the above language from the FCC order, there are a number of fatal

defects in these other arguments that are still worth noting.  For example, NSL cites a Department of Education press release as supposed authority for the proposition that the Budget Act amendments must be interpreted as having taken effect immediately upon the Budget Act's enactment.  Not only is this Department of Education report not particularly authoritative, but NSL also fails to quote *any* language from the report that offers any real support for the proposition that Department of Education believed the Budget Act was intended to have immediate effect, a fact that is not surprising given that the report predated the enactment of the Budget Act.  However, perhaps more importantly, NSL has also deliberately failed to provide this Court much more probative communications from the Department of Education that directly undermine its position.  Specifically, in *Donahue v. Navient Sols., Inc.*, NSL stipulated to having received an email from the Department of Education instructing it to not make any changes to its collection procedures pursuant to the Budget Act amendments until the Department of Education itself issued guidance to "ensure that borrower rights are safeguarded."  No. 3:16-cv-00244-MEM, Dkt. 24 (M.D. Pa. Dec. 5, 2016).  Of course, it was the FCC, not the Department of Education, that was expressly permitted to implement the changes to the law made by the Budget Act.  However, this email clearly contradicts NSL's assertion that the Department of Education felt that the Budget Act changes needed to be implemented with immediate effect and without regard to any protection for the rights of federal borrowers.[2]

---

[2] It should be noted that this is a "revocation" case where repeated calls were made after the borrower requested the calls stop, not an instance where a borrower was contacted for the first time to be educated about repayment options as seems to be contemplated by the Department of Education report.  Indeed, there is no evidence that Congress or any governmental agency has **ever** condoned the use of autodialers to repeatedly harass federal borrowers who do not wish to be called.  The reality of the situation is that NSL has long been one of the most prolific violators of the TCPA in the nation, even prior to the enactment of the Budget Act.  Its arguments do not reflect a genuine misunderstanding of the law, but rather an attempt to justify violations of the TCPA that were ongoing on for years prior to the enactment of the Budget Act and have continued to into the present.

Just this week, a different court within this Circuit came to this exact conclusion when faced with a nearly identical motion for certification of interlocutory appeal from this very Defendant.  The court in *Cooper v. Navient Sols., LLC*, concluded that Navient "ha[d] not articulated a substantial ground for disagreement on this issue of the effect of the FCC's August 11, 2016 Order."  No. 8:16-CV-3396-JSM-MAP, Dkt. 33 at 4 (M.D. Fla. May 25, 2017).  The *Cooper* court held:

> Simply put, the FCC had express authority under the Bipartisan Budget Act of 2015 to prescribe regulations to interpret the Budget Act's amendments.  And, pursuant to that authority, the FCC instructed that federal government calls cannot continue to place calls to debtors after the debtors request that the calls cease.  The Court sees no compelling reason to certify the issue to the Eleventh Circuit.

*Id*.  Consequently, this Court should find that there are no substantial grounds for disagreement on this issue.

## III.  NSL Has Failed To Meaningfully Confront Adverse Authority

NSL's motion for certification is notable for its rather shocking failure to mention *any* adverse authority as part of its analysis, including particularly the recent and directly on-point decision in *Cooper v. Navient Sols., LLC*, No. 8:16-CV-3396-T-30MAP, 2017 WL 1424346 (M.D. Fla. Apr. 21, 2017), a case in which the court ruled *against* NSL's motion for summary judgment.  Instead, NSL relies upon deeply flawed cases such as *Silver v. Pennsylvania Higher Educ. Assistance Agency*, No. 14-CV-0652-PJH, 2016 WL 1258629, at *1 (N.D. Cal. Mar. 31, 2016), where the court did not have the benefit of the binding FCC guidance in interpreting the Budget Act amendments.  Likewise, *Hassert v. Navient Sols., Inc.*, No. 16-CV-243-JDP, 2017 WL 1380778, at *1 (W.D. Wis. Jan. 5, 2017), the other case cited by NSL, is not particularly helpful in that the arguments made regarding the issue of the effective date of the amendments appear to have been neither presented to or considered by that court.  Rather, the sole issue

addressed by the court was whether the debt at issue in that case was encompassed by the Budget Act amendments.

NSL has also failed to confront unfavorable case law as to what constitutes a substantial ground for difference of opinion such that certification of an interlocutory appeal is warranted. A substantial ground for difference of opinion may arise "when a legal issue is (1) difficult and of first impression, (2) the district courts of the controlling circuit are split as to the issue, or (3) the circuits are split on the question." *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.*, 165 F. Supp. 3d 1330, 1335 (N.D. Ga. 2015). Here, the *Cooper* court, which appears to be the only other case within this Circuit to address this issue, disposes of the first two criteria, establishing that this is neither an issue of first impression nor one upon which district courts in this circuit have disagreed, and ultimately denied an identical motion for certification of interlocutory appeal, concluding that there were not substantial grounds for disagreement on this issue. *Cooper,* No. 8:16-CV-3396-JSM-MAP, Dkt. 33 at 5. The final criteria, conflict amongst circuits courts, is not met because no circuit court has yet addressed the issue.

## IV. Certification Would Not "Materially Advance" The Litigation

As part of its argument on this point, NSL makes the underwhelming contention that a "significant portion" of the Plaintiff's claims might be disposed of by the proposed appeal. What NSL does not say, with good reason, is that there will be any avoidance of a future trial. With respect to the TCPA, the issue to be tried is whether there was a revocation of consent in June of 2015, well before the November 2, 2015 enactment of the Budget Act. Because the issues to be considered during the proposed interlocutory appeal would not change NSL's liability for the intervening calls between the purported revocations and enactment of the Budget Act, such an appeal would not have any meaningful impact on the need for trial of the revocation issue. On

the other hand, if the Plaintiff were to lose the revocation issue at trial, there would be a savings of judicial labor in that a factual finding of a lack of revocation would mean that there was no violation of the TCPA before or after enactment of the Budget Act, thus entirely side-stepping the issue that NSL seeks to appeal.  Furthermore, even if the Plaintiff wins at trial but the Eleventh Circuit finds NSL's Budget Act arguments to have merit, the damages from calls after November 2, 2015 could easily be subtracted from the judgment without the benefit of a new trial.  As can be seen, under no circumstances will an interlocutory appeal result in any reduced judicial labor, and the proposed interlocutory appeal actually creates the prospect of the expenditure of unnecessary judicial resources under certain scenarios.

Respectfully submitted,


*/s/Stefan A. Alvarez*
Stefan A. Alvarez, Esquire
Florida Bar No: 0100681
William Peerce Howard, Esquire
Florida Bar No:  0103330
THE CONSUMER PROTECTION FIRM, PLLC
210-A South MacDill Avenue
Tampa, FL 33609
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Stefan@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on May 26, 2017, a true and correct copy of the foregoing has been electronically filed with the Clerk of the District Court using the CM/ECF system, which will provide electronic notice of the filing to all counsel of record.


*/s/Stefan A. Alvarez*
Stefan A. Alvarez, Esquire